RENDERED: JULY 17, 2026; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0616-MR

PUBLIC PROTECTION
CABINET; AND KENTUCKY
PERSONNEL BOARD                                             APPELLANTS


                        APPEAL FROM WHITLEY CIRCUIT COURT
v.                      HONORABLE DANIEL BALLOU, JUDGE
                        ACTION NO. 24-CI-00280


BILLY CAUDILL; JONES HIATT;
MICHAEL NUNLEY; AND
ROBERT CAUDILL                                                APPELLEES


OPINION
REVERSING

** ** ** ** **

BEFORE: ACREE, L. JONES, AND MOYNAHAN, JUDGES.

JONES, L., JUDGE: The Public Protection Cabinet ("PPC") and the Kentucky

Personnel Board ("the Board") appeal an order of the Whitley Circuit Court, which

required PPC to increase the salary of four employee investigators in the

Department of Alcoholic Beverage Control, Division of Enforcement ("ABC").

The circuit court held that the term "work county" in 101 KAR[1] 2:034 § 1(2), as used by PPC and the Board is "unlawful, unconstitutional, and a violation of § 2 of the Kentucky Constitution's equal protection clause." Specifically, the circuit court held that the requirement that an incumbent employee must be in the same county as a newly hired employee for the purpose of salary adjustment lacks a rational basis and creates an "artificial disqualifier." Appellants argue this is a "class-of-one" claim that is in direct violation of *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008). After careful review, we agree with Appellants and reverse the circuit court.

**Factual and Procedural Background**

Michael Nunley, Robert Caudill, Billy Caudill, and Jones Hiatt (collectively "Appellees") are investigators with ABC.[2] There are approximately 30-40 investigators for Kentucky's 120 counties. Each investigator is assigned a "work county" on their Personnel Action Notification ("PAN") form on file with the Kentucky Personnel Cabinet. Nunley's work county was Whitley; Robert Caudill's work county was Floyd; Billy Caudill's work county was Perry; and

---

[1] Kentucky Administrative Regulation.

[2] Testimony at the evidentiary hearing before the Board revealed that Appellees were titled Investigator III, but this is no longer a title in ABC and the highest achievable rank is that of Investigator II. Appellees testified that, although they are now titled Investigator II, they were given a 10% raise when the change to their title was made.

Hiatt's work county was Fayette. However, investigators have a broader work area that encompasses several counties surrounding their work county. For example, Nunley also works in Knox, Bell, and Laurel counties. All Appellees testified at the evidentiary hearing that, on occasion, they work in counties outside of their work county and work area, and that investigators have statewide jurisdiction. Due to the number of counties in Kentucky and the number of investigators at ABC, currently no two investigators are assigned the same work county as indicated on their PAN.

In November 2021, Appellees filed grievances after learning that a new investigator, William Crider, was hired at a higher salary than their own.[3] It is undisputed that Crider was assigned Hopkins as his work county, which is not the same as any of the Appellees. In fact, Hopkins County is in western Kentucky, while Appellees' work counties are in central and/or eastern Kentucky. The grievances made their way through ABC and then to the Appointing Authority at PPC, who concluded Appellees were not entitled to a salary adjustment based on Crider's salary as a new hire because the conditions of 101 KAR 2:034 § 1(2) had not been met. Appellees then appealed to the Board and an evidentiary hearing was held. The hearing officer recommended the salary adjustments be denied and

---

[3] The Appellees also referenced three other investigators in their original grievance, but these individuals were hired as transfers from other state agencies who were permitted to keep their rate of pay. Appellees have abandoned arguments concerning all investigators except Crider.

-3-

the Board entered an order to that end. On June 17, 2024, Appellees then filed an action in the Whitley Circuit Court styled as "Complaint, Consolidated Appeals and Petition for Declaration of Rights/Declaratory Judgment." The parties briefed the circuit court, and oral arguments were held. The circuit court ultimately held that there was no rational basis for the disparity in pay as between Appellees and Crider, and they were entitled to the pay adjustments sought. This appeal followed.

**Standard of Review**

Interpretation of an agency regulation is a question of law reviewed de novo. *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 475 (Ky. 2006). Further, KRS[4] 446.084 provides that "[a] court reviewing an administrative body's action, including without limitation a petition for judicial review of an administrative body's rulemaking or adjudicatory actions, shall apply de novo review to the administrative body's interpretation of statutes, administrative regulations, and other questions of law." *See also* KRS 13A.247,[5] which provides,

> (1) An administrative body shall not interpret a statute or administrative regulation with the expectation that the interpretation of the administrative body is entitled to deference from a reviewing court.

---

[4] Kentucky Revised Statute.

[5] Senate Bill 84, entitled "An ACT relating to judicial review of state agency action" was passed in response to the decision of the United States Supreme Court in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).

(2) The interpretation of a statute or administrative regulation by an administrative body shall not be entitled to deference from a reviewing court.

## Analysis

The only issue before this Court is whether the phrase "same work county" in 101 KAR 2:034 § 1(2), as applied to Appellees, is unconstitutional. The version of the regulation in effect in 2021, when Appellees filed their grievances, provided, in relevant part only:

> NECESSITY, FUNCTION, AND CONFORMITY: KRS 18A.110 requires the Secretary of Personnel to promulgate administrative regulations which govern the pay plan for all employees in the classified service. This administrative regulation establishes requirements to assure uniformity and equity in administration of the pay plan in accordance with statutory requirements.
>
> Section 1. New Appointments.
>
> . . . .
>
> > (2) The appointing authority shall adjust to that salary an employee who is earning less than the new appointee's salary, if the appointing authority determines that the incumbent employee:
> >
> > > (a) Is in the same job classification;
> > >
> > > (b) Is in the same department or office;
> > >
> > > (c) **Is in the same work county**; and

(d) Has a similar combination of education and experience relating to the relevant job class specification.

(Emphasis added.)

It is undisputed that all ABC investigators are merit employees of the Commonwealth and that Appellees and Crider have the same job classification, are in the same department, and have a similar combination of education and experience. It is also undisputed that "work county" is not specifically defined in the regulations. It is further undisputed that Appellees do not claim to be members of a protected class. To that end, a class-of-one claim exists "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Appellees claim they are treated differently in terms of their salary under 101 KAR 2:034 § 1(2) due to application of the term "same work county."

The United States Supreme Court has ruled that a class-of-one claim is not applicable in the public employment context. *Engquist*, 553 U.S. at 594. In that case, Engquist, a public employee, argued that the Equal Protection Clause forbids public employers from irrationally treating one employee differently from others similarly situated, regardless of whether the different treatment is based on

-6-

the employee's membership in a particular class. In its analysis, the Court differentiated between the government as lawmaker and the government as employer, reasoning that "the government as employer indeed has far broader powers than does the government as sovereign." *Id.* at 598 (citation omitted). The Court ultimately disagreed with Engquist's arguments, holding as follows:

> [T]he class-of-one theory of equal protection—which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review—is simply a poor fit in the public employment context. To treat employees differently is not to classify them in a way that raises equal protection concerns. Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship. A challenge that one has been treated individually in this context, instead of like everyone else, is a challenge to the underlying nature of the government action.

*Id.* at 605.

> The Court went on to explain further:

> In concluding that the class-of-one theory of equal protection has no application in the public employment context—and that is all we decide—we are guided, as in the past, by the "common-sense realization that government offices could not function if every employment decision became a constitutional matter." *Connick*, *supra*, at 143, 103 S. Ct. 1684.[6] If, as Engquist suggests, plaintiffs need not claim discrimination on the basis of membership in some class or group, but rather may argue only that they were treated by their employers worse than other employees similarly situated, any

---

[6] *Connick v. Myers*, 461 U.S. 138, 143 (1983).

-7-

personnel action in which a wronged employee can conjure up a claim of differential treatment will suddenly become the basis for a federal constitutional claim. Indeed, an allegation of arbitrary differential treatment could be made in nearly every instance of an assertedly wrongful employment action—not only hiring and firing decisions, but any personnel action, such as promotion, salary, or work assignments—on the theory that other employees were not treated wrongfully. [*See Engquist v. Dep't of Agric.*, 478 F.3d 985, 995 (9th Cir. 2007).] On Engquist's view, every one of these employment decisions by a government employer would become the basis for an equal protection complaint.

. . . .

The practical problem with allowing class-of-one claims to go forward in this context is not that it will be too easy for plaintiffs to prevail, but that governments will be forced to defend a multitude of such claims in the first place, and courts will be obliged to sort through them in a search for the proverbial needle in a haystack. The Equal Protection Clause does not require "[t]his displacement of managerial discretion by judicial supervision." *Garcetti v. Ceballos*, 547 U.S. 410, 423, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006).

In short, ratifying a class-of-one theory of equal protection in the context of public employment would impermissibly "constitutionalize the employee grievance." *Connick*, 461 U.S., at 154, 103 S. Ct. 1684.

*Id.* at 607-09.

With *Engquist* in mind, we turn to the issue before us. We first note that KRS 344.100 is also applicable and provides:

-8-

Notwithstanding any other provision of this chapter,[7] **it is not an unlawful practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system**, or a **system which measures earnings by quantity or quality of production or to employees who work in different locations**, if the differences are not the result of an intention to discriminate because of race, color, religion, national origin, sex, or age forty (40) and over, or because the person is a qualified individual with a disability, nor is it an unlawful practice for an employer to give and to act upon the results of any professionally developed ability test provided that the test, its administration or action upon the results is not designed, intended, or used to discriminate because of race, color, religion, national origin, sex, or age forty (40) and over, or because the person is a qualified individual with a disability.

(Emphasis added.) In other words, it is not a violation of the Kentucky Civil Rights Act for an employer to have different standards of compensation in a merit system or for employees who work in different locations.

Application of 101 KAR 2:034 § 1(2) does not raise equal protection issues. The requirement that a newly-hired employee be "in the same work county" as the incumbent employee applies to *all* merit employees of the Commonwealth, not just PPC.[8] In the recommended order that was adopted by

---

[7] KRS Chapter 344 is Kentucky's Civil Rights Act.

[8] In an *Amicus Curiae* brief filed with this Court, the Kentucky Personnel Cabinet states that there are over 30,000 merit employees of the Commonwealth.

PPC, the hearing officer found that none of the Appellees had a work county "equal to that of Crider." The circuit court found that use of the phrase "equal to" was overly vague, ambiguous, subjective, and subject to different interpretations. We disagree. Although the order could have said none of the Appellees had *the same* work county as Crider to directly mimic the language of the regulation, there is no other logical interpretation of the phrase "equal to" *except* to mean "the same." This is difference without a distinction.

The circuit court also found that PPC used the term "work county" inconsistently and interchangeably with "home county" and "work area." We disagree. There was no evidence that "work county" means anything other than that listed on the employee's PAN and is always a singular county. This may or may not be the same as the "home county" where the employee resides. Investigators may have work areas that encompass multiple counties adjacent to their work county due to the number of investigators compared to the number of counties in Kentucky, and these may *occasionally* overlap between investigators for brief periods.[9] Importantly, although it is undisputed that Crider did not share the same work county as any of the Appellees, there was also no evidence that Appellees *ever* shared the same work area or worked in the same county as Crider

---

[9] Testimony at the evidentiary hearing revealed, for example, that investigators will work outside of their work counties and/or work areas for training purposes or to assist with an undercover investigation.

-10-

at any time. Further, just because an employee *may* work in a county outside of their work area on occasion or in a county that is different from their "work county," this temporary status does not rise to the level of changing the "work county" on the employee's PAN for the purpose of salary. If it did, this could result in constant changes for thousands of employees across the Commonwealth and give rise to countless claims warned about and prohibited by *Engquist*.

"[E]mployment decisions are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify." *Engquist*, 553 U.S. at 604. To that end, the requirement that newly hired employees must be in the same work county as the incumbent employee before salary adjustment of the incumbent employee can occur takes into consideration factors like similar workloads and the cost of living in the same work county. 101 KAR 2:034 § 1(2) is applicable to all merit employees of the Commonwealth, and its application to Appellees does not give rise to an equal protection issue.

## Conclusion

Accordingly, and for the foregoing reasons, the order of the Whitley Circuit Court is REVERSED.

-11-

ALL CONCUR.

BRIEFS FOR APPELLANTS:              BRIEF FOR APPELLEES:

Jennifer Wolsing                    Sandra J. Reeves
T. Chad Thompson                    Corbin, Kentucky
Erritt Griggs
Frankfort, Kentucky

*AMICUS CURIAE* BRIEF FOR
KENTUCKY PERSONNEL
CABINET:

Catherine M. Stevens
Frankfort, Kentucky